UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUSAN BALILES,

      Plaintiff,

v.                                        Case No.  8:10-cv-1049-T-TBM

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

      Defendant.
                                /

## **O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income payments.  The Plaintiff urges that her case be reversed and remanded for further consideration because the Administrative Law Judge (ALJ) failed to pose a hypothetical question to the vocational expert that comprehensively described her impairments and failed to give proper weight to the opinion of her treating doctor.  For the reasons set out herein, the decision is affirmed.

A.

Plaintiff was forty-nine years old at the time of her administrative hearing in August 2009.[1]  Plaintiff has a high school equivalent education.  Her past relevant work was as a

---

[1] The first administrative hearing on this claim was conducted in March 2005.  At that time, Plaintiff claimed she could not work due to depression and an inability to be around people.  Plaintiff also had hepatitis C and hypothyroidism.  She complained of her feet and legs swelling and hurting.  She also complained of fatigue.  Plaintiff testified she slept about six to eight hours a night but still had trouble getting up and sometimes stayed in bed until noon.  She had migraine headaches about three times a week and vomited every morning.  She

waitress, salesperson, and retail store manager. Plaintiff applied for Supplemental Security Income payments in March 2003, alleging disability as of March 3, 2003, by reason of depression, anxiety, hepatitis C, liver and bladder problems, migraine headaches, mood swings, weakness, upset stomach, and pain. The Plaintiff's application was denied originally and on reconsideration.

At the de novo hearing conducted August 5, 2009, Plaintiff testified that she could no longer work because she could not be around people and her body is failing her. She suffers from anxiety and depression, which have worsened since March 2006 when she stopped seeking care. She recently was hospitalized for five days due to a rash on her feet, and she had hurt her hand in a fall. She has not stopped drinking. Plaintiff does not have money for medication or treatment. She lives on food stamps and help from her boyfriend. She does some cleaning, but she cannot think straight enough to follow through on anything. She gets confused and angry and her mind strays. She gets along with her neighbors but does not go out except occasionally to the store.

Plaintiff indicated that she had not returned to Bay Care since March 2006. She had treated there with nurse practitioners but stopped going because of personal problems and lack

---

had diarrhea about once a day as a result of all the medication she takes. Plaintiff stated she could stand for fifteen to thirty minutes and lift ten pounds, but could not bend or kneel without having assistance to get back up. (R. 373-98). The ALJ denied the claim by decision dated June 23, 2005. (R. 16-22). After the Appeals Council denied the request for review, Plaintiff filed suit in this court. By Order dated July 9, 2008, the Commissioner's decision was reversed and remanded for clarification and further consideration of Plaintiff's mental health records. (R. 432-39). On remand, the Appeals Council vacated its final decision and directed that Plaintiff be allowed a new hearing. A hearing was set for April 1, 2009, but was continued to allow Plaintiff to obtain a representative. (R. 556-67). The hearing was again continued to allow counsel to obtain updated medical records and additional information from The Harbor to respond to the district court's concerns. (R. 570-79).

of funds. Overall, her depression has gotten worse; it changes with what happens to her in her life. She received some medications through the Health Department for her depression that helped some. It was discovered that her thyroid was "up or down," and her blood was as well. When she got a little better, her knees went out and she has difficulty getting up from a seated position. Even if offered a simple job like collecting tolls, she doubted she could do the work.

In discussing her mental health care, Plaintiff was unaware of any care by a Dr. Cannon. *See* Plaintiff's testimony (R. 590-607).

The ALJ next took testimony from Steven Simon, a vocational expert (VE). In pertinent part, the VE testified on a hypothetical question which assumed a person of Plaintiff's age and education, capable of light exertional work as long as it was simple, routine, and repetitive; involved the ability to understand and carry out simple, unskilled instructions; and did not involve sustained concentration for multi-task assignments. On such hypothetical, the VE opined such person could not perform Plaintiff's past work but could perform work such as cleaner housekeeping work, hand packer or packager work like bagger and hand bander, and photocopying machine operator. Such jobs involved normal interactions with co-workers but not a lot of interaction with people.

On further assumptions propounded by Plaintiff's counsel that such individual had no significant limitation in carrying out very short and simple instructions, but marked limitations in maintaining attention and concentration for extended periods; marked limitations in performing activities within a schedule, maintaining regular attendance, and being punctual; marked limitations in working in coordination with and proximity to others; marked limitations in the ability to complete a normal workday and workweek without

3

interruptions; and moderate limitations for interacting appropriately with the general public, accepting instructions, responding to criticism, getting along with co-workers, responding appropriately to changes in the workplace, setting realistic goals, and making plans independently of others, no work was available. (R. 607-10).

On November 25, 2009, the ALJ determined that while Plaintiff has severe impairments related to alcohol abuse and dependence with major depression and post-traumatic stress disorder (PTSD), alcohol withdrawal, chronic alcoholic liver disease, Hepatitis C, and histories of hypertension, hyperlipidemia, and hypothyroidism, she nonetheless had the residual functional capacity to perform light exertional work as long as it was simple, routine, repetitive work involving simple, unskilled instructions, but not involving sustained concentration for multi-task assignments. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 407-18). The Appeals Council denied Plaintiff's request for review.

B.

Consideration of the Plaintiff's claim is governed by certain principles. In order to be entitled to Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

## C.

Plaintiff initially complains that the ALJ erred by failing to give a complete hypothetical question to the vocational expert. Thus, she argues that the ALJ gave great weight to the opinion of a state agency doctor yet failed to include in the hypothetical question to the VE limitations for limited interpersonal interaction and work in a low stress environment as suggested by the doctor. Since the hypothetical question was incomplete and did not comprehensively address all of Plaintiff's limitations, Plaintiff urges that the case should be reversed and remanded for further development of the vocational record.

In response, the Commissioner reviews the mental health records and argues that they show Plaintiff capable of working with no more than moderate psychological limitations which were fairly assessed by the ALJ in his residual functional capacity (RFC) assessment and fully presented to the VE.

Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1562 (quoting *Brenem v.*

*Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). However, an ALJ need not include findings in the hypothetical that the ALJ has properly discounted or rejected as unsupported. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Here, the decision reflects that after a full discussion of the evidence related to Plaintiff's mental health, the ALJ gave "significant weight" to the opinions of two state agency nonexamining doctors. (R. 416). As between the two, the ALJ indicated that he gave greater weight to the opinion of Michael R. Stevens, Ph.D. (R. 412), who assessed Plaintiff to have mild limitations in activities of daily living and moderate limitations in maintaining social functioning and with concentration, persistence and pace.[2] As Plaintiff notes, this psychologist also commented that Plaintiff was socially withdrawn due to social anxiety and that she was "capable to do simple tasks in low stress environment with limited interpersonal interaction." (R. 100). Since the ALJ's hypothetical to the VE did not include a limitation for low stress work with limited interpersonal interaction (R. 607-08), Plaintiff urges a remand is warranted.

For the following reasons, I conclude that Plaintiff is not entitled to relief on this first claim. A fair reading of the decision reflects the ALJ's full consideration of the medical and non-medical record presented by Plaintiff. The decision further reflects his recognition of the nonexamining doctor's assessment here relied upon by Plaintiff. And, when the whole of the decision is considered, it is apparent that the ALJ chose to reject any limitation for low stress work from Plaintiff's RFC and the hypotheticals propounded the VE. Absent any

---

[2]Dr. Steven's PRTF is found at (R. 88-101) and his mental RFC is found at (R. 182-85). Dr. Timothy D. Foster's PRTF is found at (R. 115 -28) and his mental RFC is found at (R. 178-81).

7

demonstration on this appeal that the ALJ incorrectly assessed Plaintiff's RFC, I can find no basis for a remand.

As for the doctor's comment regarding her capacity for work involving limited interpersonal interaction, such was in fact discussed with the VE.  While no such limitation was included in the ALJ's initial hypothetical, in a follow-up question, the ALJ inquired whether the jobs identified by the VE as available under the hypothetical involved frequent interaction with people.  In response, the VE indicated that none of the work identified required a lot of interaction with people and only normal interaction with co-workers.  (R. 609).  Furthermore, as addressed below, the ALJ gave consideration to other evidence regarding Plaintiff's ability to get along with others.  While Plaintiff decries the difference in terminology used by the ALJ and the VE, she fails to demonstrate that she was more than moderately limited in her social interactions or that this was not adequately considered by the ALJ and addressed by the VE.[3]

Plaintiff is correct that the ALJ did not expressly question the VE about Dr. Stevens' comment that she was capable of work in a low stress environment.  However, as indicated above, because the decision reflects the ALJ's thorough consideration of the whole of the evidence including this comment by the nonexamining doctor, I am obliged to conclude that any suggestion for low stress work was implicitly rejected by the ALJ and that he accounted for all such limitations as he determined appropriate in his hypothetical to the VE.  Under the applicable standard, the ALJ need not include limitations not found to exist and absent any

---

[3]It is worth noting that Plaintiff's counsel, who was present at the hearing, made no further attempt to clarify this matter when given the opportunity to do so.

demonstration by Plaintiff of an error in the RFC assessment by the ALJ or that this limitation was necessary in light of the whole of the record, there is no cause for a remand.

First, the decision reflects that the ALJ expressly noted Dr. Stevens' comment about low stress work in his discussion of the opinion evidence where he stated:

> one State agency medical consultant opined the claimant was capable of understanding and remembering instructions, doing simple tasks in a low stress environment with limited social interaction, being cooperative, and being aware of hazards. Another State agency medical consultant opined the claimant was able to sustain concentrated task orientated activity, but had moderate limits in her abilities to maintain concentration, work within a schedule and maintain regular attendance, complete a normal workday or workweek without interruptions from psychologically based symptoms, relate appropriately to others, and adapt to changes in the workplace. I give significant weight to these opinions overall. The evidence indicates the claimant has some difficulty with concentration, particularly during periods of symptom exacerbation. However, the evidence further shows that the claimant often does well when she is compliant with treatment.

(R. 415-16). But these assessments were not the sole bases for the ALJ's assessment of Plaintiff's mental functional capacity. Thus, the ALJ also gave significant weight to the consultative examination by Gerald Hodan, Ph.D. (R. 416), who indicated:

> As regards psychological work capabilities, [Plaintiff] will probably do best with briefly stated instructions and doing simple, repetitive and routine tasks now. She seems to have problems with sustained concentration needed to do multi-task assignments. She is capable of maintaining good personal appearance and hygiene. She is able to develop and sustain smooth relationships with others as well. She should be able to present herself for work reliably unless she experiences a bout of severe depression again.

9

(R. 131-32). Plaintiff's treatment records were also considered. In discussing records from The Harbor, the ALJ noted that they reflected complaints of decreased concentration and memory but that generally Plaintiff did well when she was compliant with treatment. Her mental status examinations were within normal limits when compliant, and her GAF scores reflected only moderate symptoms. Neither the notes from The Harbor (or from anyone else) suggested episodes of decompensation.

In addition to a full review of the medical records, the ALJ considered non-medical evidence suggesting lesser limitations than Plaintiff here claimed. As the ALJ noted, Plaintiff herself and her boyfriend both suggested she got along fine with others even if she was socially withdrawn. (R. 412). And, as her boyfriend also reported, Plaintiff was generally able to follow instructions and deal with deadlines and schedules. *Id.* Plaintiff herself testified at the administrative hearing that she got along with her neighbors although she did not socialize much. (R. 603-04).

By my consideration, the clear implication from all of this is that the ALJ ultimately found no need to include any limitation beyond that set forth in the RFC assessment and employed with the VE. Apart from citing this comment from the nonexamining doctor, Plaintiff cites to no other record suggesting that the comment was not fairly considered and properly discounted by the ALJ. Significantly, Plaintiff does not challenge the RFC assessment or demonstrate from the medical or nonmedical record that greater limitations than

determined by the ALJ were required.[4]  In these circumstances, I find no basis to order a remand for further consideration of this same evidence.

By her second claim, Plaintiff urges the ALJ erred by failing to give proper weight to the opinion of her treating physician, Dr. Cannon.  In particular, the Plaintiff cites to a mental RFC completed at The Harbor by a nurse practitioner and apparently signed off on by Dr. Faye Cannon.  *See* (R. 174-77); *see also* (R. 102-14).  By this assessment, Plaintiff suffers numerous marked limitations and has experienced multiple episodes of decompensation.  Plaintiff urges that the doctor and the nurse practitioner were part of an "interdisciplinary team" and in such arrangement, under the Regulations, the nurse practitioner may be viewed as an acceptable medical source whose opinion is entitled to the same substantial weight as that afforded the physician.  To the extent that the ALJ chose to discount the assessment, Plaintiff urges that the reasons given by the ALJ for doing so are not supported by substantial evidence.

In response, the Commissioner notes that Plaintiff relies on outdated regulations and case law for his "interdisciplinary team" argument, noting that the Regulations since 2000

---

[4]This case presents a recurring problem where Social Security counsel raises a complaint such as this for the first time before this court, after having represented the plaintiff at the administrative hearing and there failed to raise the claim before the ALJ or make the inquiry with the VE, even though afforded a full opportunity to do so.  As the record here demonstrates, counsel made no inquiry about low stress work but instead propounded a complicated and compound hypothetical based on an assessment by a nurse practitioner assuming a number of marked and moderate limitations. (R. 610).  Although obviously afforded the opportunity to follow-up on the ALJ's questioning, counsel neither complained to the ALJ or inquired himself about low stress work.  While I fully recognize the ALJ's duty to proffer complete hypothetical questions, counsel bears an obligation to develop a full record in support of the claim for disability and here, were it necessary to do so, I would find that any error in the hypothetical was waived.  *See Alacare Home Health Servs., Inc., v. Sullivan,* 891 F.2d 850, 855 n.5 (11th Cir. 1990).

have excluded interdisciplinary teams from being acceptable medical sources. Further, the record from The Harbor reveals treatment by nurse practitioners and social workers but no treating psychologist or psychiatrist. As Plaintiff herself testified, she received treatment from nurse practitioners and she did not even know who Dr. Cannon was.

Essentially for the reasons urged by the Commissioner, Plaintiff is not entitled to relief on this claim. First, the applicable Regulation does not include as an acceptable medical source an "interdisciplinary team." *See* 20 C.F.R. § 916.913(a). In any event, Plaintiff here indicated that all her care at The Harbor was by a nurse practitioner. When asked, Plaintiff did not know who Dr. Cannon was. A review of The Harbor records does not reveal that Dr. Cannon was a treating doctor. In these circumstances, Dr. Cannon cannot be considered a treating source and the opinions of this nurse practitioner are not evaluated under the treating physician standard. While the opinions must be considered, *see* 20 C.F.R. § 916.913(d)(1), standing alone they are not entitled to any particular deference.

In any event, in addressing the assessment, the ALJ chose to discount the same, as well as an assessment by another nurse practitioner, upon a review of all the evidence and opinion testimony and particularly because The Harbor progress notes did not support the severe functional limitations assessed or that Plaintiff could not maintain some employment. By the ALJ's review, the progress notes reflected Plaintiff did well when compliant with treatment and when not drinking, her GAF score was generally noted to be 55 to 60 indicating only moderate symptoms, the records reflected gaps in treatment, and the opinions appeared based on Plaintiff's subjective complaints rather than the objective findings. (R. 412, 416). While Plaintiff disputes these conclusions, she fails to demonstrate from the record that they

12

are unsupported. In short, Plaintiff does not demonstrate error in the ALJ's handling of the assessments by these nurse practitioners.

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 8th day of September 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record